IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ARTEMYS L. COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-84 (RDA/JFA) |
| ) | |
| KETTLER MANAGEMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Partial Motion to Dismiss ("Motion") the Complaint filed by Plaintiff Artemys Coleman ("Plaintiff"). Dkt. 6. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendant's Memorandum in Support (Dkt. 7), Plaintiff's Opposition (Dkt. 13), and Defendants' Reply (Dkt. 20), this Court grants the Motion in part and denies it in part for the following reasons.

### I. BACKGROUND[1]

Plaintiff Artemys Coleman is an African American woman and Prince George's County, Maryland resident who began working as a marketing specialist for Defendant Kettler Management on October 16, 2019. Dkt. 1 ¶¶ 5, 8. Defendant Kettler Management, organized under the laws of Virginia, is a property management company that manages about 79 residential communities. *Id.* ¶ 6. Plaintiff was supervised by Defendants Nicholas Meadows, Alma Zamudio,

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

and Nasir Mahmood—each a Kettler Management employee. *Id.* ¶ 11. She also reported to Defendants Heather Parnell and Jesika Evans. *Id.* ¶ 12. In her Complaint, Plaintiff describes that she suffers from a "serious immune compromised condition," which places her at a higher risk during the COVID-19 pandemic. *Id.* ¶ 13.

At the outset of the COVID-19 pandemic in the United States, Defendant Kettler Management on March 16, 2020 sent Plaintiff a "Pandemic Absentee Preparation Employee Survey," which asked if she would be unable to come to work during the pandemic for any of several listed reasons, including health risks that might result from contracting the virus. *Id.* ¶¶ 14-15. Plaintiff answered yes. *Id.* ¶ 16. On April 27, 2020, Plaintiff told her supervisors about her health concerns and presented medical documentation to qualify her for accommodations to work from home. *Id.* ¶ 17. Two days later, Plaintiff's doctor completed and faxed to Kettler Management a "Health Care Provider Questionnaire," which the company needed to "explore all available options" regarding Plaintiff's limitations. *Id.* ¶¶ 19-22. On May 18, 2020, Plaintiff asked Defendant Parnell for an extension of her work-from-home status, given that the pandemic had not subsided, but Parnell responded by saying Plaintiff would need "more than just a doctor's note." *Id.* ¶¶ 23-24.

Plaintiff resubmitted the "Health Care Provider Questionnaire," which was completed by by her doctor, to Defendant Parnell on May 27, 2020. *Id.* ¶ 26. In response to a question asking whether Plaintiff's health impairment affected "major life activities," Plaintiff's doctor answered "Yes." *Id.* ¶ 27. And in response to a question asking specifically which life activities were affected, Plaintiff's doctor responded, "When her conditions get worse." *Id*. Plaintiff's doctor also indicated that Plaintiff needed to work from home and could still perform all essential job

functions if she did so. *Id.* ¶ 31. Plaintiff alleges that Kettler Management refused to process and approve this questionnaire. *Id.* ¶ 32.

On July 1, 2020, Plaintiff produced a doctor's note, which stated she could not attend work between July 2 and July 14, 2020. *Id.* ¶ 34. On July 21, 2020, Defendant Meadows in a written warning told Plaintiff that "there is no working from home." *Id.* ¶ 36. Eventually, on August 10, 2020, Defendants required Plaintiff to return to the office, stating that the essential functions of her position required her to work in person. *Id.* ¶¶ 39-40. Plaintiff alleges that she returned to the office against her doctor's orders to continue working from home. *Id.* ¶ 41.

While Plaintiff was working from home, a colleague of hers—identified as "Ivan" in the Complaint—allegedly began claiming credit for the leases Plaintiff was securing for the company. *Id.* ¶ 18. On November 16, 2020, Plaintiff emailed Defendant Evans and complained of favoritism, unfairness, and a stressful work environment. *Id.* ¶¶ 44-45. She asked to be transferred and, fearing reprisal from company management for her complaint, asked that her request remain private. *Id.* ¶ 45. After Plaintiff and Evans spoke, Defendants Meadows and Mahmood asked Plaintiff to explain what had been bothering her. Plaintiff alleges that she restated her concerns of favoritism and complained that Ivan had been "stealing the leases she secured through self-guided tours" while she worked from home. *Id.* ¶ 49. Defendants Meadows and Mahmood told Plaintiff that in the future "everyone will be treated equally" and assured Plaintiff they would instruct Ivan to turn over Plaintiff's leases. *Id.* ¶ 50.

At some point afterward, an African American resident in a property managed by Kettler Management complained of another leasing agent's racist conduct. *Id.* ¶ 51. Plaintiff alleges that Defendant Meadows responded to this complaint by moving the leasing agent to the back of the office while reassigning Plaintiff to that leasing agent's former desk. *Id.* ¶ 52. According to

Plaintiff, her desk transfer was the product of racial profiling, and she was moved so the company might avoid receiving further complaints of racism from residents. *Id.* ¶¶ 53, 58-59. On December 11, 2020, Plaintiff again emailed Defendant Evans and requested a transfer, stating that she felt targeted by upper management's decision to move her desk. *Id.* ¶ 54. Plaintiff first spoke with Defendant Evans and then met with Defendants Meadows and Zamudio. *Id.* ¶¶ 56-57.

On February 4, 2021, Plaintiff was sexually assaulted and harassed at her workplace by Defendant George Bolo, a contract employee with Kettler Management. *Id.* ¶¶ 60-61. The Complaint alleges that Bolo made inappropriate comments, attempted to kiss Plaintiff's hand, grabbed Plaintiff's waist, and forcefully thrust himself several times on her backside. *Id.* ¶¶ 62-64. When Plaintiff later asked for his email address, Defendant Bolo allegedly replied, "Why do you need my email, so you can send me some naked pictures of you in your sexy panties?" *Id.* ¶ 68. Later that same day, Plaintiff wrote Defendant Bolo a letter explaining that she would not tolerate sexual assault. *Id.* ¶ 71. She emailed this letter to Defendant Bolo and hand-delivered a copy to Defendant Mahmood, who she also informed of the sexual assault and harassment. *Id.* ¶¶ 72-73. The next day, Defendant Mahmood told Plaintiff he had reported this information to Defendant Meadows. *Id.* ¶ 82.

Several hours after receiving Plaintiff's letter, Defendant Bolo replied to Plaintiff by email, apologizing and acknowledging the assault and harassment. *Id.* ¶ 77. Plaintiff responded by saying, "No hard feelings." *Id.* ¶ 78. Less than a week later, on February 10, 2021, Kettler Management terminated Plaintiff's employment. According to Plaintiff, the company claimed that the language she used in her email to Defendant Bolo was "threatening." *Id.* ¶ 84.

Plaintiff then filed a filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). On October 28, 2021, the EEOC issued a Right

4

to Sue Notice. In the Complaint filed in this Court, Plaintiff brings two claims for relief under the Americans with Disabilities Act ("ADA"); claims of racial discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964; and an assault claim against Defendant Bolo. *Id.* ¶¶ 86-140. She claims that these actions resulted in economic damages, pain and suffering, and other compensatory damages. *Id.* ¶¶ 141-42. After Plaintiff filed suit in this Court on January 26, 2022, Defendants jointly filed a Partial Motion to Dismiss Plaintiff's Complaint on February 22, 2022. Dkt. 6. Plaintiff then sought, and received, an extension of time to respond to Defendants' Motion to Dismiss, filing her opposition brief on March 30, 2020. Dkt. 13. On April 5, 2022, Defendants filed a reply brief in support of their Motion. Dkt. 20.

## II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court considers the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va.

2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

III. ANALYSIS

Before turning to the substance of the claims Plaintiff raises in her Complaint, this Court must confront a threshold issue: Plaintiff appears to bring claims arising under federal civil rights statutes against several individual defendants. Namely, she has sued Defendants Meadows, Zamudio, Mahmood, Parnell, and Evans under both the ADA and Title VII in their individual capacities as employees of Defendant Kettler Management. To be sure, these sorts of claims cannot proceed against individual defendants who are not themselves employers. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998); *Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 421 (E.D. Va. 2004) ("Although Title VII permits suits against an 'employer' within the meaning of that statute, it does not permit suits against individual defendants who are not employers, such as supervisors."). The ADA operates in the same manner. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("[T]he ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."). Plaintiff's allegations in the Complaint leave no doubt that Kettler Management was Plaintiff's employer; the other

6

individual defendants—save Defendant Bolo—were Plaintiff's supervisors. The Fourth Circuit, as well as "every circuit that has confronted this issue since the enactment of the [Civil Rights Act,] has rejected claims of individual liability." *Lissau*, 159 F.3d at 181. And the Complaint in no way suggests Plaintiff brings these claims against these defendants in their official capacities. As a result, they are not proper defendants to Plaintiff's Title VII or ADA claims. The Court must therefore dismiss Counts I, II, III, IV, and VI against Defendants Meadows, Zamudio, Mahmood, Parnell, and Evans.

Defendants do not seek to dismiss Count V, which is an assault claim brought only against Defendant Bolo. Nor do they seek to dismiss Count IV, alleging harassment in violation of Title VII, or Count VI, which alleges unlawful retaliation under Title VII. As to Defendant Kettler Management, the Motion seeks dismissal of Counts I, II, and II of the Complaint. The Court addresses each argument in turn.

### A.  ADA Claims (Counts I and II)

Defendants first argue that Plaintiff's ADA claims in Counts I and II must be dismissed because they exceed the scope of Plaintiff's EEOC charge. Plaintiff's EEOC charge alleged that on January 21, 2020, she was "disciplined for not working in the office when she had reasonable accommodation to work from home." Dkt. 7-1 at 3. Defendants emphasize that Plaintiff's EEOC charge did not mention certain facts Plaintiff alleges in the Complaint—namely, a denial of her request for an accommodation and a directive that she return to work on August 10, 2020. Defendants contend that Plaintiff is therefore precluded from asserting those ADA claims in this litigation. In response, Plaintiff counters that her EEOC charge contained sufficient detail to place Defendants on notice of Plaintiff's allegations, observing that EEOC charges are not held to the same pleading standards as complaints brought in federal court.

After an employee includes allegations in an EEOC charge, "[i]n any subsequent lawsuit alleging unlawful practices . . . a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). So when a plaintiff brings allegations in a federal lawsuit that "exceed the scope of the EEOC charge and any charges that would have naturally arisen from an investigation thereof, they are procedurally barred.'" *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 596 (2005)). At the same time, EEOC charges are often completed by laypersons, not lawyers, and thus "must be construed with utmost liberality." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

Plaintiff put information in her EEOC charge related to Defendants' alleged failure to accommodate her disability. Although her EEOC charge did not identify each of the specific dates that form the basis of her failure-to-accommodate claim in this litigation, the charge contained enough information to make Defendants aware of the gravamen of Plaintiff's ADA theory. Defendants' reliance on *Burton v. Maximus Fed.*, No. 3:20-cv-955, 2021 WL 1234588, at *3 (E.D. Va. April 1, 2021) does not undercut this finding. In *Burton*, the Court found the plaintiff's EEOC charge did not contain allegations sufficient to put the defendant on notice of the plaintiff's ADA claims for retaliation or failure to accommodate. *Id.* By contrast, in this case Plaintiff's EEOC charge invoked the ADA specifically and also suggested that Defendant sought to undermine a reasonable accommodation. *See* Dkt. 7-1 at 3. The Court finds that Plaintiff's ADA allegations do not "fall outside the scope of the EEOC charge" and are therefore not procedurally barred. *See Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 834 (E.D. Va. 2015).

Next, Defendants argue that Count II should be dismissed because it is duplicative of Count I. In Count I, Plaintiff alleges that Defendant Kettler Management "intentionally discriminated

8

against Plaintiff because of her disability and/or perceived disability as set forth under the Americans with Disabilities Act and has repeatedly refused her requests for reasonable accommodation." Dkt. 1 ¶ 90. And in Count II, Plaintiff alleges that her employer "failed to engage Plaintiff in an interactive process" and "failed to provide Plaintiff a reasonable accommodation." *Id.* ¶ 99. Therefore, Plaintiff in Count II appears to allege that Defendant Kettler Management failed to engage in the interactive process the ADA mandates. But that is not a standalone claim for relief. It is instead an allegation that might form part of a failure-to-accommodate claim brought under the ADA. As such, Plaintiff will have a full opportunity to develop the merits of that claim for relief, as the Court is not dismissing Count I at the pleading stage. However, Count II does not state a plausible claim for relief under the ADA and is merely duplicative of Count I. Therefore, Count II of Plaintiff's Complaint will be dismissed.

### B. Title VII Racial Discrimination Claim (Count III)

Defendants also seek to dismiss Plaintiff's claim of racial discrimination under Title VII. *Id.* ¶¶ 101-11. Specifically, Plaintiff alleges "favoritism," "being treated differently because of her race," that her employer subjected her "to a hostile and offensive environment by requiring her to switch desks," that her employer ignored her complaints of racial discrimination, and that her employer "retaliated against Plaintiff by terminating her employment." *Id.* ¶ 104.

Title VII provides that "it shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise discriminate against any individual . . . because of such individual's . . . race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Although a plaintiff at this stage is not required to *prove* facts that would allow her to establish unlawful discrimination under Title VII, to survive a motion to dismiss a plaintiff must still plead facts sufficient to state all elements of her claim. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). At the motion-to-dismiss

9

stage, a Title VII "plaintiff must plead facts that, when all reasonable inferences are drawn in the plaintiff's favor . . . would permit finding either that the plaintiff has pled a 'direct' case or that plaintiff has made a prima facie case." *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016) (citation omitted). To adequately allege a disparate treatment claim under Title VII, a plaintiff must allege facts that could show: (1) she is a member of a protected class; (2) she suffered from an adverse employment action; (3) at the time the employer took the adverse employment action she was performing at a level that met the employer's legitimate expectations; and (4) she was treated differently than similarly situated employees outside the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). No party disputes that Plaintiff satisfies the first element.

Plaintiff's race discrimination claim appears to rest largely on her assignment to a different desk, but standing alone, this is not an adverse employment action recognized under Title VII. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). As this Court has previously held, an employee who is moved to a different desk cannot establish an adverse employment action based on that fact alone. *See Smith v. Va. Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 500 (E.D. Va. 2020) (finding that allegations an employer discriminated against the plaintiff by "redoing its seating chart" and assigning new cubicle spaces did not amount to "significant changes in employment status"). The Court reaffirms that conclusion here: desk reassignment is not an adverse employment action under Title VII.

To the extent Plaintiff's termination forms part of her Title VII race discrimination claim, that event qualifies as an adverse employment action. *See Strothers v. City of Laurel*, 895 F.3d

10

317, 328 (4th Cir. 2018) ("[I]t is patently obvious and undisputed that termination is a materially adverse action."). Yet the Complaint tells a different story, which is that Plaintiff was terminated in retaliation for reporting sexual assault, not that her firing was racially motivated. Dkt. 1 ¶¶ 77-83. There are simply no well-pleaded allegations in the Complaint suggesting Plaintiff's termination was an adverse employment action that might support her *prima facie* claim of *race* discrimination.

As for the final factor of Plaintiff's *prima facie* case of race discrimination, Plaintiff fails to identify facts that could suggest she was treated differently on the basis of her race when compared to similarly situated employees. The allegations Plaintiff cites in support of this theory—references to favoritism and being treated differently—are not supported with specific detail. Although Plaintiff in her Opposition points to her allegations that "Ivan" was stealing her leases as an example of "favoritism" benefitting a white colleague, Plaintiff's Complaint does not make this connection and pleads no facts about Ivan with respect to the racial discrimination claim she alleges as Count III. This Court is not required to accept Plaintiff's conclusory assertions, unsupported by factual allegations, that any adverse action she experienced in the workplace was necessarily motivated by racial animus. "[T]he 'presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability].'" *Crisano v. Grimes*, No. 1:19-cv-1612, 2021 WL 120943, at *7 (E.D. Va. Jan. 12, 2021) (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).

Plaintiff also alleges that Defendant Kettler Management created a "discriminatory and hostile work environment." Dkt. 1 ¶ 119. If Plaintiff intends to allege a separate Title VII violation on this basis, she must allege facts that could permit a finding that the conduct she complains of

11

(1) was unwelcome; (2) was based on her membership in a protected class; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer. *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). One primary allegation in Plaintiff's Complaint may support Plaintiff's hostile work environment theory, which is that she was moved to a different desk on the basis of her race. But this isolated allegation is insufficient to meet the severe-or-pervasive standard. "The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial." *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994).[2] Consequently, Plaintiff cannot make a *prima facie* case.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Partial Motion to Dismiss the Complaint (Dkt. 6) is GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that the Complaint in its entirety is DISMISSED WITH PREJUDICE as to Defendants Meadows, Zamudio, Mahmood, Parnell, and Evans; and it is

FURTHER ORDERED that Count II and III of the Complaint are DISMISSED WITHOUT PREJUDICE.

Because amendment would not be futile, the Court grants Plaintiff leave to amend her complaint consistent with this opinion within 14 days if she chooses. *See* Fed. R. Civ. P. 15(a)(2).

It is SO ORDERED.

Alexandria, Virginia
September 21, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[2] The Court does not read Plaintiff's Complaint to allege an independent hostile work environment claim on the basis of her race. Insofar as Plaintiff intended to plead this theory as a separate claim for relief, the allegations in the Complaint are lacking, but Plaintiff will be permitted to amend her Complaint if she so chooses.