IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ARTEMYS L. COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-84 (RDA/JFA) |
| ) | |
| KETTLER MANAGEMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Kettler Management's ("Defendant") Partial Motion to Dismiss ("Motion") (Dkt. 25) the Amended Complaint (Dkt. 23) filed by Plaintiff Artemys Coleman ("Plaintiff"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendant's Memorandum in Support (Dkt. 25-1), Plaintiff's Opposition (Dkt. 29), and Defendant's Reply (Dkt. 30), this Court grants the Motion for the following reasons.

I. BACKGROUND[1]

Plaintiff is an African American woman who began working as a marketing specialist for Defendant Kettler Management on October 16, 2019. Dkt. 23 ¶¶ 5, 8. Defendant is a property management company that manages 79 residential communities. *Id.* ¶ 6. Defendant's employees Nicholas Meadows, Alma Zamudio, and Nasir Mahmood supervised Plaintiff at different periods throughout her tenure. *Id.* ¶ 11. She also reported to Heather Parnell and Jesika Evans. *Id.* ¶ 12.

---

[1] For purposes of considering this Motion, the Court accepts all facts contained within Plaintiff's Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Plaintiff alleges that she suffers from a "serious immune compromised condition," which places her at a higher risk for severe illness from COVID-19. *Id.* ¶ 13. At the outset of the COVID-19 pandemic in the United States, on March 16, 2020, Defendant sent Plaintiff a "Pandemic Absentee Preparation Employee Survey." *Id.* ¶ 14. The survey asked if she would be unable to come to work during the pandemic for any of several listed reasons, including being at a high risk for serious complications from contracting the virus. *Id.* ¶ 15. Plaintiff answered "[y]es." *Id.* ¶ 16. On April 27, 2020, Plaintiff notified her supervisors about her health concerns and presented medical documentation to qualify for accommodations to work from home. *Id.* ¶ 17. On April 29, 2020, Plaintiff also submitted a Health Care Provider Questionnaire, which her doctor had completed. *Id.* ¶22. Plaintiff petitioned Parnell on May 18, 2020 for an extension of her work-from-home status, given that the pandemic had not yet subsided. *Id.* ¶ 23. Parnell allegedly responded that Plaintiff would need "more than just a doctor's note" for Defendant to grant her an accommodation. *Id.* ¶ 24.

On May 27, 2020, Plaintiff resubmitted the "Health Care Provider Questionnaire" to Parnell. *Id.* ¶ 25. Plaintiff alleges that her employer refused to process and approve that questionnaire. *Id.* ¶ 32. On July 1, 2020, Plaintiff produced a doctor's note, which provided that Plaintiff would be unable to work from the office from July 2, 2020 to July 14, 2020 due to medical reasons. *Id.* ¶ 34. Then, on July 21, 2020, Meadows issued a written warning to Plaintiff that "there is no working from home." *Id.* ¶ 36. Plaintiff further alleges that another one of Defendant's employees, Zamudio, falsely and harassingly accused Plaintiff of faking her disability and insisted that Plaintiff provide further documentation proving her disability. *Id.* ¶ 99. Finally, on August 10, 2020, Plaintiff's employer required her to return to the office because, according to Parnell, the essential functions of Plaintiff's position required on-site presence. *Id.* ¶¶ 39-40. Plaintiff

alleges that she subsequently returned to the office against her doctor's orders to continue working from home. *Id.* ¶ 41.

While Plaintiff was working from home, a co-worker, whom she identifies in the Amended Complaint as "Ivan," allegedly began claiming credit for the residential leases Plaintiff had secured in her role as a marketing specialist. *Id.* ¶ 18. On November 16, 2020, Plaintiff emailed Evans, complaining about unfair and unequal treatment, favoritism, and a stressful work environment. *Id.* ¶ 44. Plaintiff also asked to be transferred to a different location and, fearing reprisal from company management for her complaint, asked that her request remain confidential. *Id.* ¶ 45.

After speaking with Evans, Plaintiff met with Meadows and Mahmood, who encouraged her to express her concerns. *Id.* ¶ 47. Plaintiff restated her grievances and further voiced her frustration that Ivan had been "stealing the leases she secured through self-guided tours" while she was working from home. *Id.* ¶ 49. During this conversation, Meadows and Mahmood allegedly told Plaintiff that, moving forward, "everyone will be treated equally" and assured Plaintiff that they would instruct Ivan to turn over the leases that Plaintiff had secured. *Id.* ¶ 50. Plaintiff alleges that Meadows and Mahmood, as well as Zamudio, harassed her by falsely accusing her of avoiding her responsibilities while working from home despite knowing that Ivan was taking credit for her leases. *Id.* ¶ 99. Plaintiff further alleges that this harassment was based on her working from home, which, according to Plaintiff, was her reasonable accommodation request for her disability. *Id.*

Shortly after her conversation with Meadows and Mahmood, an African American resident in a property that Defendant managed complained of a leasing agent's racially motivated conduct. *Id.* ¶ 51. Plaintiff alleges that Meadows responded to this complaint by moving that leasing agent to the back of the office while reassigning Plaintiff to that leasing agent's former desk. *Id.* ¶ 52.

According to Plaintiff, Meadows' decision to transfer her was a product of racial profiling—Meadows transferred her to make an African American employee more visible and thus stave off any further charges of racism against the company. *Id.* ¶ 53.

On December 11, 2020, Plaintiff again emailed Evans and requested a transfer, asserting that she felt targeted by upper management's decision to have her switch desks with the leasing agent. *Id.* ¶ 54. Plaintiff first spoke with Evans about this issue before subsequently meeting with Meadows and Zamudio. *Id.* ¶ 57. During that second meeting, Meadows allegedly apologized if Plaintiff felt that he had discriminated against her and denied that he had instructed Plaintiff to transfer desks because of her race. *Id.* ¶¶ 57, 104. At some point after that meeting, Meadows allegedly told Plaintiff to switch desks with another co-worker. *Id.* ¶ 59. Plaintiff additionally alleges that Mahmood, Meadows, and Zamudio took advantage of the fact that other non-Black employees, including Ivan, were taking credit for the leases Plaintiff secured by accusing Plaintiff of lackluster productivity while working from home. *Id.* ¶ 104. Finally, on February 10, 2021, Defendant terminated Plaintiff.[2] *Id.* ¶ 83.

In the aftermath of her termination, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). *See id.* ¶¶ 3, 85. On October 28, 2021, the EEOC issued a Right to Sue Notice. *Id.* On January 26, 2022, Plaintiff then filed suit in this Court against Defendant Kettler Management and several of its employees. *See* Dkt. 1. The Complaint alleged disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Counts I and II), race discrimination in violation of Title VII of the

---

[2] Plaintiff does not allege that Defendant terminated her because of her disability or her race. Rather, Plaintiff claims that Defendant terminated her because she reported to her employer that George Bolo, one of the two remaining Defendants in the instance case, had sexually assaulted her. *Id.* ¶¶ 83-84.

4

Civil Rights Act of 1964 ("Title VII") (Count III), sexual harassment in violation of Title VII (Count IV), assault (Count V),[3] and unlawful retaliation in violation of Title VII (Count VI). *Id.*

On February 22, 2022, Defendants jointly filed an initial Motion to Dismiss ("Initial Motion") Counts I, II, III, IV, and VI with respect to individual Defendants Meadows, Zamudio, Mahmood, Parnell, and Evans, and Counts I, II, and III as to Defendant Kettler Management. Dkt. 6. On September 21, 2022, the Court granted in part and denied in part Defendants' Initial Motion. Dkt. 20. Specifically, the Court dismissed with prejudice the Complaint in its entirety as to Defendants Meadows, Zamudio, Mahmood, Parnell, and Evans. *Id.* at 7, 12. However, the Court denied the Initial Motion with respect to Count I of the Complaint. *Id.* at 8. Finally, the Court granted the Initial Motion as to Counts II and III, dismissing those counts without prejudice. *Id.* at 9, 12.

Subsequently, on September 30, 2022, Plaintiff filed an Amended Complaint, substituting Count II of the initial Complaint with a claim for hostile work environment on the basis of disability in violation of the ADA and substituting Count III of the initial Complaint with a claim for hostile work environment on the basis of race in violation of Title VII. Dkt. 23. On October 13, 2022, Defendant Kettler Management filed the instant Motion (Dkt. 25) and a Memorandum in Support thereof (Dkt. 25-1). Plaintiff then sought, and received, an extension of time to respond to Defendant's Motion to Dismiss. Dkt. Nos. 27; 28. On November 4, 2022, Plaintiff filed her Opposition to Defendant's Motion (Dkt. 29), and on November 10, 2022, Defendant filed a Reply in support of its Motion (Dkt. 30).

## II. STANDARD OF REVIEW

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure

---

[3] Plaintiff brought her assault claim only against Defendant Bolo.

12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) ("[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  In general, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III. ANALYSIS

Defendant Kettler Management now seeks dismissal of Counts II and III of the Amended Complaint.  Defendant first argues that both claims are outside the ambit of the EEOC charge.  In the alternative, Defendant contends that the Court should dismiss both counts because Plaintiff's allegations do not satisfy the "severe or pervasive standard" for a hostile work environment claim based on either disability or race and Plaintiff has made only conclusory allegations in support of her two new claims.  The Court addresses each argument in turn.

A. Whether Counts II and III Exceed the Scope of the EEOC Charge

Defendant first argues that there is no language in the EEOC charge that even hints at a hostile work environment claim. Plaintiff counters that her hostile work environment claims are reasonably related to her EEOC charge because both the charge and the amended counts of the complaint allege the same bases for discrimination—namely, disability and race. With respect to the ADA hostile work environment claim (Count II), Plaintiff further contends that the fact that she checked off the box labeled "disability" on the EEOC charge sufficiently put Defendant on notice of a potential hostile work environment based on disability claim. After all, so Plaintiff contends, the EEOC charge form does not contain a box labeled "hostile work environment."

Once an employee files an EEOC charge, "[i]n any subsequent lawsuit alleging unlawful practices . . . a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). Accordingly, when a plaintiff brings allegations in a federal lawsuit that "exceed the scope of the EEOC charge and any charges that would have naturally arisen from an investigation thereof, they are procedurally barred." *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 596 (2005)). At the same time, because laypersons, not lawyers, are often the ones completing EEOC charges, the Court "must . . . construe[] [such charges] with utmost liberality." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

Here, the entirety of Plaintiff's EEOC charge relating to disability-based discrimination is as follows: "On or about 21 April 2020, I was disciplined for not working in the office when I had a reasonable accommodation to work from home . . . . I believe I have been discriminated against based on my disability, in violation of the Americans with Disabilities Act of 1990." Dkt. 7, Ex.

7

A (Plaintiff's EEOC Charge). And her allegations of race-based discrimination in the EEOC charge consist of the following few sentences:

> On or about 17 November 2020, I began complaining to Regional Property Manager Jessica Evans about Assistant Property Manager Alma Zamudio and Property Manager Nicholas Nick Meadows discriminating against me because of my race. My request for a transfer was denied . . . . I believe I have been discriminated and retaliated against based on my . . . race (Black/African American), in violation of Title VII of the Civil Rights Act of 1964, as amended."

*Id.*

The Fourth Circuit and courts within the Fourth Circuit have held that claims of harassment or hostile work environment fall outside the scope of EEOC charges referring only to discrimination. *See e.g.*, *Evans v. Technologies Applications & Service Co.*, 80 F.3d 944, 963 (4th Cir. 1996) (finding that the plaintiff could not maintain a sexual harassment claim because the claim in the EEOC charge was based solely on gender discrimination); *Bailey v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:98CV565-MU, 2001 WL 1019736, at *10 (W.D.N.C. Apr. 3, 2001) (concluding that the harassment and hostile work environment claims were not reasonably related to the original ADA and ADEA claims in the EEOC charge); *Emmons v. Rose's Stores, Inc.*, 5 F. Supp. 2d 358, 363 (E.D.N.C. 1997), *aff'd*, 141 F.3d 1158 (4th Cir. 1998) (holding that alleged incidents of harassment were not reasonably related to the claims of sexual discrimination and unequal pay in the EEOC charge).

Furthermore, the Fourth Circuit has instructed that single discrete acts alleged in an EEOC charge are insufficient to put a defendant on notice of a broader pattern of conduct necessary to support a hostile work environment claim. *See Chacko v. Patuxent Inst.*, 429 F. 3d 505, 509 (4th Cir. 2005); *see also Muir v. Winston-Salem State Univ.*, No. 1:11-CV-282, 2012 WL 683359, at *8 (M.D.N.C. Mar. 2, 2012) ("Nothing in the EEOC charge remotely approaches a pattern of discriminatory conduct, let alone, an environment 'sufficiently severe or pervasive' that a

reasonable person would find it 'abusive.'" (quoting *Bass v. E.I. Dupont de Nemours & Co.*, 324 F. 3d 761, 7675 (4th Cir. 2003))); *Balas v. Huntington Ingalls Indus., Inc.*, No. 2:11CV347, 2011 WL 4478864, at *5 (E.D. Va. Sept. 26, 2011) ("[W]hile Balas now makes claims of a hostile work environment, she never indicated in her charges to the EEOC that Price's single hug was part of such an environment . . . .").

In the instant case, Plaintiff's EEOC charge only contains allegations of disability-based and race-based discrimination—the charge makes no mention of harassment or a hostile work environment. Moreover, in her EEOC charge, Plaintiff merely points to an isolated instance of purported disability-based discrimination—namely, that on April 21, 2020, Defendant disciplined her for not working in the office when she had a reasonable accommodation to work from home. *See Chacko*, 429 F.3d at 511 ("[T]he allegations of harassment in the administrative charges involved three specific acts at specific times. None suggested the long-term harassment that [the plaintiff] sought to prove."). Accordingly, Plaintiff's EEOC charge could not have put Defendant on notice of its ADA or Title VII hostile work environment theories.

Plaintiff's reliance on *Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396 (M.D.N.C. 2011) does not cut against such a finding. Plaintiff cites *Fulmore* for the proposition that a hostile work environment claim may be reasonably related to an EEOC charge that only contains an allegation of discrimination where both the complaint and the charge allege the same basis for discrimination. Dkt. 29 at 5 (citing *Fulmore*, 834 F. Supp. 2d at 423). However, *Fulmore* is easily distinguishable from the case at bar. There, the plaintiff not only alleged race-based discrimination in violation of Title VII in his EEOC charge, but also expressly alleged in the charge that he believed that he was "a subject of surveillance" and that he was experiencing "continuing harassment and intimidation." *Fulmore*, 834 F. Supp. 2d at 422-23. In holding that the hostile

9

work environment claim reasonably related to the EEOC charge, the district court noted that the term "continuing harassment" "signals a hostile work environment claim[,]" and that "[s]everal potential components of the alleged hostile work environment are clearly related to the Charge allegations." *Id.* at 423. Here, there is no comparable language in Plaintiff's EEOC charge that could be construed as "signal[ing] a hostile work environment claim." *Id.*

Finally, the Court rejects Plaintiff's argument that checking off the box for disability put Defendant on notice of a potential hostile environment claim under the ADA. While Plaintiff is correct in that the EEOC charge form does not contain a box labeled "hostile work environment," the charge form does, however, contain a box for "continuing action," which is the crux of a hostile work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."); *Chacko*, 429 F.3d at 511 (noting that discrete acts alleged in an EEOC charge are insufficient to put a defendant on notice of a broader pattern of conduct that could create a hostile work environment); *Bolds v. S.C. Dep't of Mental Health*, No. 220CV01653RMGMHC, 2021 WL 1413324, at *6 (D.S.C. Feb. 11, 2021), *report & recommendation adopted*, No. 2:20-CV-01653-RMG, 2021 WL 960506 (D.S.C. Mar. 15, 2021) (observing that the "continuing action" box . . . is unique to hostile work environment claims").

In fact, Plaintiff's failure to check the "continuing action" box counsels in favor of a finding that the ADA hostile work environment claim is not reasonably related to the EEOC charge. *See Chacko*, 429 F.3d at 511-13 (emphasizing that the plaintiff failed to check the continuing action box in the EEOC charge in concluding that the EEOC charge did not encompass the hostile work environment claim); *Muir*, 2012 WL 683359, at *8 n.10 ("A claimant's failure to check the 'continuing action' box in the EEOC charge—while not dispositive—may be probative in

10

considering whether an initial charge encompasses a hostile work environment claim."). For these reasons, the Court ultimately finds that Plaintiff's hostile work environment claims in Counts II and III of the Amended Complaint exceed the scope of her EEOC charge and must be dismissed.

B. Whether Counts II and III Otherwise State a Claim for Hostile Work Environment

Even if Plaintiff's hostile work environment claims are within the scope of her EEOC charge, Counts II and III of the Amended Complaint fail to state a claim for hostile work environment under the ADA and Title VII, respectively. The Court considers each claim in turn.

1. Hostile Work Environment Based on Disability (Count II)

To state a claim for hostile work environment under the ADA, a plaintiff must plead the following elements:

> (1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

Defendant does not contest that the first, second, or fifth prongs are satisfied. However, Defendant asserts that Plaintiff has not made any allegations suggesting that she experienced severe or pervasive harassment. Defendant further contends that Plaintiff's allegations insinuating that Defendant's employees harassed Plaintiff due to her disability are conclusory.

To satisfy the "severe or pervasive" element of a hostile work environment claim brought under the ADA, a plaintiff must show that her work environment was both subjectively and objectively hostile. *Id.* at 178. Under the objective prong of this inquiry, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Exchanges

11

in the workplace that are merely "disrespectful, frustrating, critical, and unpleasant" are insufficient to create a hostile work environment. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished).

The Fourth Circuit has further advised that "general allegations" regarding a hostile work environment without "accounts of specific dates, times or circumstances" are insufficient to state a hostile work environment claim. *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994); *see also Carroll v. Amazon Data Servs., Inc.*, No. 121CV01177RDATCB, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022) ("Failure to plead at least modest details that would allow the Court to assess the frequency and severity of allegedly harassing conduct can warrant dismissal of a hostile work environment claim."); *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing a hostile work environment claim where the plaintiff failed to plead any specific allegations that could "shed any light into [the] severity or frequency" of the purportedly harassing conduct).

Here, the incidents that Plaintiff alleges do not amount to severe or pervasive harassment. As an initial matter, Plaintiff misconstrues the prerogative of her supervisor, Zamudio, exercising his ability to ask her for documentation regarding her disability as harassment. *See* EEOC Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, EEOC Notice No. 915.002 (October 17, 2002) ¶ 6 ("When the disability and/or the need for accommodation is not obvious, the employer may ask the individual for reasonable documentation about his/her disability and functional limitations."). Moreover, Plaintiff does not provide any details as to the specific dates on which her supervisors allegedly harassed her or even the frequency of the purported harassment. *See e.g.*, Dkt. 23 ¶ 99 (alleging generally that Plaintiff's supervisor, Zamudio, "falsely and harassingly accused [her] of faking her disability[,]" that Zamudio "also harassingly insisted Plaintiff provide further documentation proving her

12

disability[,]" and that her supervisors "Mahmood, Meadows, and Zamudio began regularly and harassingly falsely accusing her of doing nothing when she was working from home").

Further, Plaintiff has not sufficiently alleged that Defendant's conduct towards her was motivated by her disability. To establish the third element of an ADA hostile work environment claim—that the alleged harassment was "based on" a disability—a plaintiff must show that "but for" her disability, she would not have been the victim of the purported harassment. *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (citing *Jennings v. Univ. of N.C.*, 482 F.3d 686, 723 (4th Cir. 2007)). Here, the gravamen of Plaintiff's ADA hostile work environment theory is that her supervisors harassed her due to her disability "since [they] were specifically attacking her disabled status and her working from home, which was Plaintiff's reasonable accommodation request for her disability." Dkt. 23 ¶ 99. However, nowhere in the Amended Complaint does Plaintiff allege facts that could support an inference that her supervisors' purported mistreatment of her was because of her disability rather than her work-from-home status. *See Baker v. Clarke*, No. 7:18-cv-00620, 2020 WL 6703436 (W.D. Va. Nov. 13, 2020) ("[C]onclusory assertions that disability and race caused these events cannot, without supporting facts, state an actionable claim of discrimination . . . .").

There are no allegations in Plaintiff's Amended Complaint, for instance, that her supervisors made derogatory comments to her regarding her disability or insinuated that she was unproductive due to her disability. *See Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that the plaintiff had failed to state a claim for hostile work environment where there were no allegations of derogatory comments and only conclusory allegations that he was treated less favorably than younger employees); *Myers v. Maryland Auto. Ins. Fund*, No. CCB-09-3391, 2010 WL 3120070, at *7 (D. Md. Aug. 9, 2010) (noting that criticism implying that disabled employees

are slow workers or overstate their disabilities may be considered disability-based harassment). At most, Plaintiff's allegations suggest that her supervisors mistreated her due to their negative opinion of employees who work remotely.

Accordingly, the Court finds that Plaintiff's allegations do not rise to the level of severity or pervasiveness necessary to support a hostile work environment claim based on disability. The Court further finds that Plaintiff's mere conclusory allegations that Defendant's employees harassed her because of her disability cannot satisfy the third element of an ADA hostile work environment claim.

### 2. Hostile Work Environment Based on Race (Count III)

To state a claim for hostile work environment under Title VII, a plaintiff must plead that the conduct she complains of (1) was unwelcome; (2) was based on her membership in a protected class; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer. *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). Here, Defendant does not dispute that the first or second elements are satisfied. However, Defendant argues that any alleged harassment was not sufficiently severe or pervasive and that such purported harassment cannot be imputed to Defendant.

Here, the essence of Plaintiff's race-based hostile work environment claim appears to be that her supervisors were allowing non-Black employees to take credit for her work so that her supervisors could falsely accuse Plaintiff of being unproductive. *See* Dkt. 23 ¶ 104. However, "courts have held that alleged nitpicking . . . and pretextual write-ups are insufficient to create a hostile work environment." *Carroll*, 2022 WL 3161895, at *6; *see also Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) ("[The plaintiff's] allegations, which largely include the actions taken

14

against her in response to the concerns regarding her performance, fall well short of alleging an abusive working environment."); *Guillen v. Esper*, No. 1:19-CV-1206, 2020 WL 3965007, at *14 (E.D. Va. July 13, 2017) (noting that the plaintiff's allegations of nitpicking and criticism could not establish a hostile work environment claim). Moreover, Plaintiff only specifically references two instances of purported race-based harassment—Mahmood, Meadows, and Zamudio falsely writing her up for unproductivity and Meadows directing her to transfer desks. Dkt. 23 ¶¶ 51-52; 104. The court finds that these isolated incidents do not meet the standard of severe or pervasive misconduct. *See Carter*, 33 F.3d at 461 ("The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial.").

Furthermore, Plaintiff's allegations do not satisfy the final element of a hostile work environment claim—imputation to an employer. "To impute liability to an employer for an employee's harassment, a plaintiff must demonstrate that 'after having acquired actual or constructive knowledge of the harassing conduct, the employer had taken no prompt and adequate remedial action to correct it.'" *Swindell v. CACI NSS, Inc.*, No. 5:17-CV-617-D, 2020 WL 5824024, at *10 (E.D.N.C. Sept. 30, 2020), *aff'd*, No. 20-2179, 2022 WL 3754531 (4th Cir. Aug. 30, 2022) (quoting *Mikels v. City of Durham*, 183 F.3d 323, 329 (4th Cir. 2009)).

In the instant case, Plaintiff notes in her Amended Complaint that after she complained to Meadows and Mahmood that Ivan was taking credit for her leases, they allegedly responded that, moving forward, "everyone will be treated equally" and that "Ivan would be instructed to turn over the leases that [Plaintiff] secured . . . ." Dkt. 23 ¶¶ 48-50. Similarly, once Plaintiff communicated to Meadows that she felt that he had racially targeted her when he had directed her to switch desks with another leasing agent who had been reported for racist conduct, Meadows apologized and instructed her to switch desks with a different co-worker. *Id.* ¶¶ 57-59. Thus, by Plaintiff's own

15

admission, her supervisors attempted to rectify any unequal treatment that Plaintiff felt she was receiving. Moreover, Plaintiff does not allege that her supervisors' remedial actions were ineffective. *See Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020) (finding no imputation to an employer where the plaintiff did not allege that the employer's remedial action failed to stop the harassment or that any employees harassed her again after the employer took the remedial action). Consequently, Plaintiff cannot make a *prima facie* case for hostile work environment based on race.

### C. Leave to Amend

Lastly, the Court finds that leave to amend as to both Counts II and III of the Amended Complaint would be futile here because any disability-based or race-based hostile work environment claims would fall outside the scope of the EEOC charge for the reasons provided *supra*. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (noting that leave to amend should be denied when amendment would be futile); *see also Ferguson v. Baltimore Police Dep't*, No. CV BPG-21-2502, 2022 WL 3447273, at *4 n.4 (D. Md. Aug. 16, 2022) (dismissing a claim with prejudice because the EEOC charge and claim were incongruous); *Grant v. Baltimore Police Dep't*, No. CV RDB-21-2173, 2022 WL 1321593, at *5 (D. Md. May 3, 2022) (dismissing race-based and gender-based discrimination claims with prejudice because the EEOC charge could not have put the defendant on notice of those claims). Accordingly, Counts II and III are dismissed with prejudice and without leave to amend.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Partial Motion to Dismiss the Amended Complaint (Dkt. 25) is GRANTED; and it is

...

FURTHER ORDERED that Counts II and III of the Amended Complaint are DISMISSED WITH PREJUDICE.

It is SO ORDERED.

Alexandria, Virginia
December 12, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge